# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | No. 18-cr-90-CJW-MAR |
| vs. | **ORDER** |
| SHANE LEE LAGRANGE, | |
| Defendant. | |

## I.  INTRODUCTION

This matter is before the Court pursuant to defendant's Objections (Doc. 18) and the government's Objections (Doc. 19) to the Report and Recommendation (Doc. 15) of the Honorable Mark A. Roberts, United States Magistrate Judge.  On October 17, 2018, defendant filed a Motion to Suppress.  (Doc. 7).  The government timely filed a resistance.  (Doc. 10).  On November 5, 2018, Judge Roberts held a hearing on the motion.  (*See* Doc. 12).  On November 28, 2018, Judge Roberts issued the Report and Recommendation, which recommends that the Court deny the Motion to Suppress.  On December 10, 2018, defendant and the government filed their respective Objections.  For the following reasons, the Court **overrules in part and sustains in part** defendant's Objections, **overrules** the government's Objections, and **denies** the Motion to Suppress.

## II.  STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, a "judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C); *see also* FED. R. CRIM. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's

recommendation."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (noting that a district judge must "undertake[ ] a de novo review of the disputed portions of a magistrate judge's report and recommendations"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also* FED. R. CRIM. P. 59(b)(3) ("The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."). It is reversible error for a district court to fail to engage in a de novo review of a magistrate judge's report and recommendation when such review is required. *Lothridge*, 324 F.3d at 600. Accordingly, the Court reviews the disputed portions of the Report and Recommendation de novo.

### III. FACTUAL BACKGROUND[1]

On December 29, 2017, Cedar Rapids Police Department Officers Matt Messer and Lucas Liddle were on routine uniformed patrol. Before their shift began, the officers received an intelligence memorandum regarding defendant with the subject line "Burglary/Wanted Subject/Officer Safety Information." The memorandum advised:

> An informant advised DOT Investigator Jason Nusbaum that Shane Lagrange . . . is in possession of a pink Glock with camo grips. The CI stated he saw him in possession of the gun on 12/27/2017. Lagrange has been staying at different hotels on 33rd Ave SW. Use caution if you make contact. . . . Lagrange is a meth user as well.

Officer Messer was personally familiar with defendant, having had contact with defendant several times and having arrested him once. Officer Messer recalled that defendant's

---

[1] After reviewing the Hearing Transcript (Doc. 16), the Court finds that, except where noted in the subsequent section, Judge Roberts accurately and thoroughly set forth the relevant facts in the Report and Recommendation. The Court will, therefore, only briefly summarize the facts here. When relevant, the Court relies on and discusses additional facts in conjunction with its legal analysis.

2

driver's license was in suspended status at the time of each of Officer Messer's previous encounters with defendant. Officer Messer interpreted the subject line of the memorandum to mean that defendant had an outstanding warrant. There was, however, no outstanding warrant with respect to defendant.

Officers Messer and Liddle decided to patrol the area around the hotels on 33rd Avenue SW. While driving through the parking lot of the Hometown Inn and Suites, the officers noticed a white Pontiac Grand Prix parked and running in the parking lot with at least one person inside. The car caught the officers' attention because the weather was very cold and it was snowing heavily that night, which led the officers to reason that most people would want to get inside the hotel as quickly as possible. The officers could not identify the vehicle's occupant at that time, but Officer Messer noticed that the driver was "staring intently at the officers" through the car's side mirror.

The officers left the hotel parking lot and returned fifteen to twenty minutes later to see if the status of the Grand Prix and its occupant had changed. As the officers pulled into the lot, they saw the same Grand Prix driving toward them. The car stopped in the middle of the parking lot as soon as it pulled into view of the officers' squad car. The officers drove closer to the Grand Prix and noticed that the driver was turning his head away from the officers and toward the center of the car in an apparent attempt to hide his face. Despite the driver's efforts, Officer Messer was able to identify the driver as defendant.

At about the same time that Officer Messer was able to identify defendant, defendant accelerated and left the parking lot. The officers turned around to pursue defendant, following him to a nearby restaurant parking lot, where defendant exited his vehicle. The officers exited their vehicle as well and called out to defendant, detaining him. The officers conducted a brief pat down for weapons but found nothing. Officer Messer attempted to find a record of defendant's outstanding warrant, but there was no

3

warrant. In the meantime, however, Officer Messer was able to confirm that defendant's driver's license was suspended. The officers then placed defendant under arrest. A search that was conducted incident to defendant's arrest revealed that defendant was in possession of methamphetamine. The officers then searched the Grand Prix and discovered a firearm, as well as other evidence. After defendant's arrest, defendant gave a post-*Miranda* interview and made incriminating statements.

## IV. ANALYSIS

In the Motion to Suppress, defendant argues that the officers lacked reasonable suspicion or probable cause to detain him and that the firearm, ammunition, methamphetamine, and statements made by defendant must, therefore, be suppressed as the fruit of an unlawful seizure. (Doc. 7, at 1). In its resistance, the government argues, *inter alia*, that the officers lawfully detained defendant and that the evidence discovered in the vehicle is admissible under the inevitable discovery doctrine. (Doc. 10, at 5-9, 15).

In the Report and Recommendation, Judge Roberts found that the officers had reasonable suspicion to detain defendant and that the subsequent searches of defendant's person and vehicle were lawful. (Doc. 15, at 11-25). Judge Roberts also found, in the alternative, that if the officers' initial detention of defendant were unlawful, the evidence inside the vehicle would not be admissible under the inevitable discovery doctrine. (*Id.*, at 24-25). Defendant makes a number of objections to Judge Roberts' factual findings and also objects to Judge Roberts' legal conclusions that the officers' detention and search of defendant and his vehicle were lawful. The government objects to Judge Roberts' finding that the inevitable discovery doctrine does not apply. The Court will address each objection in turn.

### A. Defendant's Factual Objections

#### 1. Officer Messer's History with Defendant

Judge Roberts found that "[Officer] Messer was familiar with [d]efendant because [Officer Messer] had personally encountered [d]efendant 'a handful' of times in the past, and arrested [d]efendant once." (Doc. 15, at 4). Defendant objects that "Officer Messer's testimony was '*roughly* a handful' of times." (Doc. 18-1, at 1 (emphasis in original)). Upon review of the record, the Court finds that Officer Messer did testify that he had encountered defendant "roughly a handful" of times. (Doc. 16, at 8). The Court concludes that Judge Roberts' finding was not inaccurate and that the addition of the word "roughly" to what was already a vague estimate does not alter Officer Messer's testimony in any material way. Accordingly, this objection is **overruled**.

#### 2. Defendant's Criminal History

Judge Roberts found that "[Officer] Messer . . . thought that [d]efendant had been in prison because there was a gap in [d]efendant's history when [Officer] Messer checked [d]efendant's name against the CRPD in-house record system prior to beginning his shift." (Doc. 15, at 4). Defendant objects that "[i]t is not a certainty that Officer Messer did a records check on [defendant] before he went on patrol on December 29, 2018." (Doc. 18-1, at 1). Upon review of the record, the Court finds that Officer Messer testified that he "most likely" checked for information on defendant in the CRPD database. (Doc. 16, at 13). Officer Messer did not specify that he had checked defendant's criminal history in the CRPD database, merely that he had checked it at some point and "it looked like there was a gap of a prison time that [defendant] had served." (*Id.*, at 12). Accordingly, this objection is **sustained** insofar as it addresses the source of Officer Messer's knowledge about defendant's criminal history.

Defendant goes on to state that "[i]f indeed [defendant's] criminal history were checked, certainly [Officer Messer] would have also checked to see if [defendant] had a

5

warrant." (Doc. 18-1, at 1). Defendant provides no evidence for his assertion that Officer Messer necessarily would have checked for warrants at the same time as checking defendant's criminal history. The Court also finds defendant's implication that Officer Messer never checked defendant's criminal history to be without basis in the record, and the Court finds defendant's implication to be contradicted by the credible testimony of Officer Messer. Accordingly, this objection is **overruled** insofar as it addresses whether Officer Messer checked defendant's criminal history.

### 3. *The Intelligence Memorandum*

Judge Roberts found that "[b]ased on the heading of the memo, 'Wanted Subject,' [Officer] Messer testified he mistakenly thought Defendant had an outstanding warrant." (Doc. 15, at 4). Defendant objects that "[t]he heading of the email was not just 'Wanted Subject.'" (Doc. 18-1, at 1-2). Upon review of the record, the Court finds that the full heading of the memo was "Burglary/Wanted Subject/Officer Safety Information." (Doc. 10-1). The Court concludes that Judge Roberts' finding was not inaccurate, as Judge Roberts was discussing only the portion of the heading relating to Officer Messer's mistaken belief that defendant had an outstanding warrant. The additional words in the heading do not alter that analysis in any material way. Moreover, Judge Roberts quoted the full subject line of the memorandum earlier in the Report and Recommendation. (Doc. 15, at 3). Accordingly, this objection is **overruled**.

Defendant also asserts that "Officer Messer's testimony that he mistakenly thought [defendant] had a warrant is not credible." (Doc. 18-1, at 2). Defendant argues that "[i]t strains credulity that Officer Messer would be actively seeking [defendant] but not check if he had a warrant first." (*Id.*). Defendant further argues that Officer Messer's testimony that the memorandum "was provided for [the officers'] safety so that they would proceed with caution IF they came in contact with [defendant]," and Officer Messer's testimony that "based on the safety email alone, they could not arrest

6

[defendant]" undermines Officer Messer's credibility. The Court disagrees. Upon review of the hearing testimony, the Court finds that Officer Messer was a credible witness, and the Court accepts Officer Messer's testimony that he mistakenly believed defendant had an outstanding warrant. It is not implausible that Officer Messer could have read the memorandum and thought it was meant to advise both that he should be cautious if he encountered defendant and that there was an outstanding warrant for defendant's arrest. The Court concurs with Judge Roberts' reasoning that the "body cam video show[ing] [Officer] Messer looking through the warrant screen on his mobile phone . . . demonstrates that [Officer] Messer expected to find the warrant in the warrant database." (Doc. 15, at 16-17). Accordingly, this objection is **overruled**.

### *4.  Defendant's Behavior in the Hotel Parking Lot*

Judge Roberts found that, prior to identifying defendant, Officer Messer saw defendant in his vehicle "staring intently at the officers." (*Id.*, at 5). Defendant argues that this is "directly contradicted" by Officer's Messer's testimony that "the windows of the Grand Prix were fogged over and there was a large amount of snow building up" and that "the windows were snow-covered." (Doc. 18-1, at 2-3). The Court finds that these points are not contradictory. Although Officer Messer did testify that the windows of the vehicle were fogged and that snow was accumulating, he also stated that he could see someone in the vehicle, that the front windshield was clear, and that he could see partially through the driver's side window. (Doc. 16, at 16-22). It is reasonable that Officer Messer would have been able to see well enough through a partially-fogged window to see which way the driver was looking, even if the view was not clear enough for Officer Messer to have identified the driver at that point. The Court finds that Officer Messer's two statements are not contradictory, and the Court accepts Officer Messer's testimony that he did see the behavior he described. Accordingly, this objection is **overruled**.

Judge Roberts also found that when the officers later returned to the parking lot, "they saw the Grand Prix driving toward them. The Grand Prix stopped in the middle of the parking lot when the driver saw the squad car." (Doc. 15, at 5). Additionally, Judge Roberts found that "[Officer] Messer noticed that the driver was driving with one hand up on the steering wheel while trying to hide his face behind his other arm and by turning his head down and toward the center console." (*Id.*). Defendant objects to this finding, arguing that this activity was not captured by the officers' dashboard camera and that the activity should have been captured by the camera if it occurred. (Doc. 18-1, at 3). The Court disagrees. Careful examination of the video footage indicates that none of these described actions would have been within the camera's view. All would have been to the left of the squad car, whereas the camera only faces directly forward. Absence of evidence, however, is not evidence of absence. Nothing about the video suggests that Officer Messer's testimony, which the Court has already found to be credible, was inaccurate. In fact, the first time the Grand Prix appears on the video, it is pulling into the Burger King parking lot, which is consistent with Officer Messer's description. Accordingly, this objection is **overruled**.

### 5. *Officer Liddle Running Defendant's Information*

Judge Roberts found that after Officer Messer identified defendant, "[Officer] Liddle entered [d]efendant's name in the computer to pull up [d]efendant's criminal record, including any outstanding warrants and citations." (Doc. 15, at 5). Defendant objects that "the body cam of Officer Liddle does not show Officer Liddle calling in or looking up information on [defendant]. He is putting on his gloves, knowing they are going to do a stop." (Doc. 18-1, at 4). Defendant mischaracterizes the evidence. As Officer Liddle's body camera footage begins, he is using the squad car's on-board computer, presumably to run defendant's information, as Officer Liddle testified. (Exhibit C). Officer Liddle subsequently puts his gloves on in preparation for leaving

8

the car. (*Id.*). The Court finds that Judge Roberts accurately described the evidence. Accordingly, this objection is **overruled**.

### 6. *Placement of Defendant's Hands*

Judge Roberts found that when defendant exited his vehicle and Officer Messer called out to him, "[defendant] appeared to have his hand near his waistband, which Messer knew from his training and experience is a place people hide weapons." (Doc. 15, at 6). Defendant objects that "[t]here is nothing in the video that shows [defendant] had his right hand near his waistband." (Doc. 18-1, at 4). Defendant is incorrect. Upon review of the dash camera footage, the Court finds that defendant did appear to have his hand at his waistband when he exited the vehicle and turned toward the officers. Accordingly, this objection is **overruled**.

### 7. *Officer Messer's Statement About Defendant's Warrant*

Judge Roberts found that "[w]hen [d]efendant asked why he was being detained when he had done nothing wrong, [Officer] Messer said [d]efendant had some warrant paperwork to take of." (Doc. 15, at 6-7). Defendant objects that "Officer Messer did not tell [defendant] he had some 'warrant' paperwork to take care of. He used the words, 'I *think* you have some paperwork to take care of.' When [defendant] further inquired, 'what paperwork?' Officer Messer said, 'a warrant.'" (Doc. 18-1, at 4 (emphasis in original)). Upon review of Officer Messer's body camera footage, the Court finds that both Judge Roberts and defendant accurately describe the evidence, and the Court fails to see any material difference between the accounts. Defendant has more precisely quoted the interaction, whereas Judge Roberts summarized it, but both defendant and Judge Roberts include all of the relevant facts. Accordingly, this objection is **overruled**.

### 8. *Officer Liddle's Search of Defendant*

Judge Roberts found that "[w]hen [Officer] Liddle began checking [d]efendant's pockets, [Officer] Messer told him to 'sit tight' and [Officer] Liddle stopped searching."

(Doc. 15, at 7). Defendant objects that "even when Officer Messer told him to 'sit tight,' Officer Liddle did not stop; he continued to search [defendant]." (Doc. 18-1, at 5). Upon review of Officer Messer's body camera footage, the Court finds that defendant is correct. Officer Liddle did not immediately stop his search when Officer Messer told Officer Liddle to "sit tight." Rather, Officer Messer had to repeat himself several times before Officer Liddle stopped searching defendant. Accordingly, this objection is **sustained**.

### 9. *Vehicle Contents*

Judge Roberts found that "[i]n accordance with the CRPD policy, [defendant's] vehicle was impounded for three reasons: (1) the driver had a suspended driver's license, (2) the vehicle contained illegal drugs, and (3) the vehicle had no proof of insurance." (Doc. 15, at 9). Defendant objects that "[t]he only illegal drugs were found on [defendant], they were not located in the vehicle." (Doc. 18-1, at 5). Upon review of the Report and Recommendation, the Court finds that this reference to drugs in the vehicle was an unintentional error and should have referred to the firearm located in the vehicle; Judge Roberts' findings of fact correctly indicates earlier that drugs were found on defendant and a firearm was found in the vehicle. (*See* Doc. 15, at 8). Accordingly, this objection is **sustained**. The Court points out, however, that Judge Roberts correctly identified the three provisions of CRPD policy under which the decision to impound the vehicle was made, namely that the driver was arrested, that the vehicle contained evidence of a crime, and that the vehicle could not be released to its owner because it did not have valid insurance. (*See* Doc. 10-2).

### 10. *Objections to the Officers' Testimony*

Defendant makes a number of objections that address, not Judge Roberts' findings of fact, but rather assertions or opinions by the officers during their testimony. Defendant objects to the officers' opinions that defendant was attempting to flee from them. (Doc.

18-1, at 3). Defendant makes several objections to the officers' description of his driving pattern. (*Id.*). Defendant objects to Officer Liddle's proffered reason for handcuffing defendant—to prevent flight—arguing that defendant never presented a credible risk of flight. (*Id.*, at 4). Finally, defendant argues that the officers' belief that the vehicle might have been stolen was not credible and was unsupported by evidence. (*Id.*, at 5). Judge Roberts, however, made no findings as to any of these subjects. Accordingly, these objections are **overruled as moot**.

### B. *Defendant's Legal Objections*

#### 1. *Driving With a Suspended License*

Defendant argues that Judge Roberts incorrectly found that the officers had reasonable suspicion to detain defendant. (Doc. 18-1, at 5-7). Judge Roberts found that the officers' "reliance on [Officer] Messer's belief that [d]efendant's license was probably suspended was reasonable, and based on this belief, alone, the officers were allowed to conduct a brief investigatory stop." (*Id.*, at 15-16). Defendant argues that Officer Messer's information was insufficient because Officer Messer "could not give a timeframe or a specific date for the last time he saw [defendant] and confirmed he did not have a license." (Doc. 18-1, at 4 (citing Doc. 16, at 63)).

Defendant overstates the record. At the hearing, defense counsel inquired on this topic:

> Q. Now, prior to December 29th, when was the last time you had actually seen Mr. LaGrange?
>
> A. I cannot remember a specific date.

(Doc. 16, at 63). Defense counsel did not pursue the issue any further. Additionally, Officer Messer testified that the "handful" of times he had previously encountered defendant, and the one time he had arrested defendant, all occurred within the two years prior to December 29, 2017. (*Id.*, at 7-8).

11

This case bears a strong similarity to *United States v. Caldwell*, 97 F.3d 1063 (8th Cir. 1996). In *Caldwell*, an officer identified the defendant as the owner of a vehicle based on the vehicle's license plate, but did not identify the defendant as the driver of the car. 97 F.3d at 1065-66. The officer was informed by a fellow officer that the defendant "probably" did not have a driver's license because it had been suspended "several months earlier." *Id.* The Eighth Circuit Court of Appeals held that this was sufficient evidence to detain the vehicle on reasonable suspicion that defendant was driving without a license. *Id.* at 1067. In the instant case, Officer Messer's information was better than that of the officer in *Caldwell* because Officer Messer had already identified defendant as the driver of the vehicle. The Court finds that the officers had reasonable suspicion that defendant was driving with a suspended license sufficient to initiate an investigatory stop. Accordingly, this objection is **overruled**.

### *2. Belief that Defendant Had a Warrant*

Judge Roberts found that the officers' seizure of defendant was reasonable based in part on Officer Messer's mistaken belief that defendant had an outstanding warrant, which Judge Roberts found was a reasonable mistake of fact. (Doc. 15, at 16-17). Defendant objects to this finding, arguing that "Officer Messer did not believe that [defendant] had a warrant at the time [Officer Messer] stopped [defendant]." (Doc. 18-1, at 6). Defendant bases his argument on speculation about how Officer Messer would have acted if he had actually believed defendant had an open warrant.

The Court rejects these arguments. Defendant provides no evidence for his arguments about how defendant thinks Officer Messer should have acted. As stated above, the Court finds that Officer Messer was a credible witness and that he genuinely believed that defendant had an outstanding warrant. "[R]easonable suspicion of criminal activity can be based upon a mistake of fact so long as that mistake was objectively reasonable." *Williams v. Decker*, 767 F.3d 734, 740 (8th Cir. 2014) (citations omitted).

12

The Court adopts Judge Roberts' finding that Officer Messer's mistake was objectively reasonable in this case. Accordingly, this objection is **overruled**.

### 3. *The Confidential Informant*

Defendant also argues that that officers could not rely on the memorandum to provide reasonable suspicion to detain defendant because the information in the memorandum was "wholly uncorroborated and therefore not reliable" and the "CI was not a known credible source of information." (Doc. 18-1, at 5-6). In order to justify a detention based on information from an informant "the government must show (1) that the informant was reliable, and (2) the underlying circumstances which make the information credible." *United States v. Sanders*, 626 F.2d 1388, 1390 (8th Cir. 2008). "Though less reliable than informants with a proven record, unproven informants are more reliable than anonymous tipsters because the police can hold them responsible for false information." *United States v. Kent*, 531 F.3d 642, 648 (8th Cir. 2008). In this case, however, Judge Roberts did not find that the officers were justified in detaining defendant based on the information from the CI, but rather that this was one of a number of factors that established reasonable suspicion. (*See* Doc. 15, at 17). The Court has already found that the officers had reasonable suspicion to detain defendant based on their suspicion that he was driving without a valid license. Whether any other factor would have stood on its own as a valid basis to detain defendant is moot. Accordingly, this objection is **overruled**.

### C. *The Government's Legal Objection*

The government "objects to [Judge Roberts'] finding [that] no substantial alternate line of independent investigation existed to justify inevitable discovery." (Doc. 19, at 1). The government argues that "the officers would have inevitably discovered the firearm in the vehicle when they arrested defendant for driving under suspension and for possessing the four baggies of methamphetamine." (*Id.*, at 3). Upon review of the

record, the Court finds that Judge Roberts correctly applied the law and that the doctrine of inevitable discovery does not apply to the facts of this case.

"The inevitable discovery doctrine provides an exception to the exclusionary rule where 'the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means.'" *United States v. Craddock*, 841 F.3d 756, 760 (8th Cir. 2016) (quoting *Nix v. Williams*, 467 U.S. 431, 444 (1984)).

> For this exception to apply, the government must prove by a preponderance that there was a reasonable probability that the evidence would have been discovered by lawful means in the absence of police misconduct and that the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation.

*Hogan v. Kelley*, 826 F.3d 1025, 1028 (8th Cir. 2016). "In this analysis, 'it is important to focus not on what the officers actually did after unlawfully recovering evidence, but on what the officers were reasonably likely to have done had the unlawful recovery not occurred.'" *United States v. McManaman*, 673 F.3d 841, 846 (8th Cir. 2012) (quoting *United States v. Villalba–Alvarado*, 345 F.3d 1007, 1020 (8th Cir. 2003)).

In this case, defendant alleges that the officers unlawfully detained him without reasonable suspicion, and that "any evidence gathered after the illegal stop of the defendant must be suppressed as fruit of the poisonous tree, including the alleged methamphetamine, the firearm and ammunition, and any statements made by the defendant after the encounter with the law enforcement officers." (Doc. 7-1, at 6). For the inevitable discovery doctrine to apply, therefore, the government would have to prove that the officers were actively pursuing a substantial, alternative line of investigation before they detained defendant. There is no evidence in the record of any such line of investigation. Although the officers pursued multiple investigations after detaining defendant, i.e. for narcotics, firearms, and driving under suspension, none of these

investigations were being actively, independently pursued separately from the officer's detention of defendant. Therefore, the doctrine of inevitable discovery does not apply. Accordingly, the government's objection is **overruled**.

### V. CONCLUSION

For the reasons set forth above, the government's objections (Doc. 19) are **overruled**, defendant's objections (Doc. 18) are **overruled in part and sustained in part**, the Report and Recommendation (Doc. 15) is **adopted in part and modified in part**, and defendant's motion to suppress (Doc. 7) is **denied**.

**IT IS SO ORDERED** this 13th day of February, 2019.

_____
C.J. Williams
United States District Judge
Northern District of Iowa